[No. 24311–0–I.   Division One.   December 17, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD BRYON BECKER, *Appellant.*

*Anthony Savage,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

GROSSE, A.C.J.—Richard Becker appeals his judgment and sentence claiming that the trial court improperly calculated his offender score. We affirm.

On March 31, 1989, Becker pleaded guilty to the crimes of manslaughter in the first degree and unlawful possession of a short firearm. According to the certification for determination of probable cause, on or about January 7, 1989, after a heavy snowfall, Richard Flynn, Richard Schindler, and Kevin Comeaux were outside of Flynn's home throwing snowballs. A snowball was thrown at a passing vehicle driven by Becker. Becker stopped his car on a side street and accompanied by the two passengers in his car (his brother and a friend) confronted Flynn and his friends. Bystanders stated that Becker drew a gun, aimed it at Schindler, and fired two shots that missed. A third shot hit and killed Flynn who was standing nearby.

Becker admitted firing the fatal shot but claimed it was inadvertent and occurred when he was trying to strike Schindler in the head with the gun. He maintained that he accepted the gun from his friend after Schindler displayed a heavy chain and was menacing him with it. Becker's brother contradicted that statement and asserted that Becker had the gun displayed and cocked before Schindler

displayed the chain. Schindler did have a chain on his person.

Becker's plea agreement provided:

On January 7, 1989 I had been previously convicted of the crime of second degree burglary. I had in my possession on that evening in King County a pistol which I believed then and now I was truly utilizing in defending myself from an attack with a chain wielded by one Richard Schindler. In the course of defending myself the gun fired and killed the deceased, Richard Todd Flynn. I did not intend to kill Mr. Flynn.

Becker's criminal history included the following crimes: (1) adult conviction: attempted robbery in the second degree; (2) adult conviction: burglary in the second degree; and (3) juvenile conviction: burglary in the second degree. The State argued that the attempted robbery should be subject to the violent offense doubling provisions of RCW 9.94A.360(9) because anticipatory crimes are to be treated the same as completed crimes in determining an offender score. Defense counsel countered that the offense is not defined as a violent offense and should be considered a nonviolent felony and scored as 1. The trial court scored the attempted robbery as a completed robbery and doubled the score.

Defense counsel also argued that the current manslaughter and unlawful possession of a short firearm convictions should be considered the same criminal conduct and sentenced as one offense. Unpersuaded, the trial court counted each conviction separately and calculated that Becker's offender score was 4, with a standard range of 51 to 68 months. The trial court sentenced Becker to 68 months. Becker argues that his prior conviction for attempted robbery in the second degree is not subject to the doubling provisions of RCW 9.94A.360(9) because it is not a "violent offense" and that his two current offenses (manslaughter in the first degree and unlawful possession of short firearm) encompassed "the same criminal conduct" and should have been scored as one offense.

The first issue is whether the violent offense doubling provision of the Sentencing Reform Act of 1981 (SRA)

applies to Becker's prior attempted robbery conviction. RCW 9.94A.360(9) provides:

> If the present conviction is for a violent offense and not covered in subsection (10), (11), (12), or (13) of this section, count two points for each prior adult and juvenile violent felony conviction, one point for each prior adult nonviolent felony conviction, and 1/2 point for each prior juvenile nonviolent felony conviction.

Two different provisions of the SRA can be read in conjunction with RCW 9.94A.360(9) to reach apparently conflicting conclusions.

In the general definition section of the SRA, a violent offense is defined as:

> (a) Any of the following felonies, as now existing or hereafter amended: Any felony defined under any law as a class A felony or an attempt to commit a class A felony, criminal solicitation of or criminal conspiracy to commit a class A felony, manslaughter in the first degree, manslaughter in the second degree, indecent liberties if committed by forcible compulsion, child molestation in the first degree, rape in the second degree, kidnapping in the second degree, arson in the second degree, assault in the second degree, extortion in the first degree, robbery in the second degree, vehicular assault, and vehicular homicide, when proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner[.]

Former RCW 9.94A.030(29).[1] Applying this section alone, Becker's prior attempted robbery conviction would not be subject to the doubling provision because the offense is not a "violent offense." The opposite result is reached by applying the SRA section on calculating an offender score which reads:

> Score prior convictions for felony anticipatory offenses (attempts, criminal solicitations, and criminal conspiracies) the same as if they were convictions for completed offenses.

RCW 9.94A.360(5). Applying this section, the prior conviction is counted "the same as if" it was a conviction for a completed offense, in which case the doubling provision

---

[1] The Legislature made minor changes to this section of the statute in 1989. The amended section is currently codified at RCW 9.94A.030(33).

would apply. This apparent conflict in the statute can be resolved by applying some general principles of statutory construction.

██ Conflicts in statutes are to be reconciled and effect given to each if this can be achieved with no distortion of the language used. *Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 391, 645 P.2d 697 (1982). However, if the statutes cannot be harmonized the court looks to the legislative treatment of the statutes. *Housing Auth. v. Sunnyside Vly. Irrig. Dist.,* 112 Wn.2d 262, 267, 772 P.2d 473 (1989). Although this case is premised on a conflict between the two sections, they can be harmonized by reading each section literally. In doing so, attempted robbery in the second degree is not a violent offense under former RCW 9.94A.030(29) as Becker contends. Nonetheless, in determining Becker's offender score, the prior attempted robbery is treated the same as the completed offense of robbery in the second degree, which is a violent crime, and therefore receives two points. The apparent conflict in the sections is based on the assumption that the attempted robbery can only receive two points if it is a "violent offense". Contrary to Becker's contention, the offense does not receive two points because it is a violent offense, but rather, it receives two points because the completed crime of robbery in the second degree would receive two points and the attempted robbery is to be treated as a completed crime. According to the plain language of RCW 9.94A-.360(5) the attempt must be treated the same as the completed crime. Such a reading of the two sections gives effect to each section and does not distort the language of the sections.

██ Even if we assume the conflict cannot be so easily resolved, the result is warranted for another reason. Provisions of a more recent specific statute prevail in a conflict with a more general predecessor, *Citizens for Clean Air v. Spokane,* 114 Wn.2d 20, 36, 785 P.2d 447 (1990). This rule applies only if the statutes deal with the same subject matter and the conflict cannot be harmonized, *Tacoma v.*

*Taxpayers,* 108 Wn.2d 679, 743 P.2d 793 (1987); *State v. Edwards,* 53 Wn. App. 907, 771 P.2d 755, *review denied,* 113 Wn.2d 1002 (1989). Under this rule the specific and more recent section RCW 9.94A.360(5) prevails over the general and older section, RCW 9.94A.030(29).

Former RCW 9.94A.030(29) provided the general definition of violent offense that applies to several sections of the SRA, including former RCW 9.94A.030(17)(a) (violent offender not eligible for first time offender waiver); former RCW 9.94A.030(31) (violent offender not eligible for home detention); and RCW 9.94A.380 (violent offender not eligible for alternative sentences). In contrast, RCW 9.94A-.360(5) applies specifically to the calculation of an offender score. The legislative history and chronology of the SRA bolster this analysis.

A violent crime was defined in the original legislation that first created the SRA. Laws of 1981, ch. 137, § 3. In 1983, the Legislature amended the SRA by adding the provision that doubles the points for a violent felony when calculating an offender score. Laws of 1983, ch. 115, § 7. Three years later the Legislature added the provision that mandates that attempted crimes be treated the same as completed crimes in calculating an offender score. Laws of 1986, ch. 257, § 25. Prior to that amendment the SRA was silent on the question of how to score prior convictions for attempted crimes. In passing the 1986 amendment the Legislature clarified the issue using explicit language that specifically applies to calculating an offender score. This specific and recent provision must prevail over the general definition. *Citizens for Clean Air v. Spokane,* 114 Wn.2d at 36.

Records of the Washington State Sentencing Guidelines Commission (Commission), as part of the legislative history, reinforce this conclusion. The Commission's Sentencing Guidelines Implementation Manual provided that the 1986 legislation "[c]larified the fact that anticipatory offenses are to be counted the same as completed offenses for the purpose of scoring current convictions". Washington

Sentencing Guidelines Comm'n, *Sentencing Guidelines Implementation Manual* § 9.94A.360 comment, at II–46 (1989). In a memorandum to the Legislature the Commission reiterated that the purpose was to do away with the distinction between attempted and completed offenses when calculating an offender score.

Count Prior Anticipatory Offenses the Same as Completed Crimes in the Offender Score

> 33. Under current law, the Offender Score for specified current offenses (e.g., serious violent, violent, Burglary 1, Burglary 2, Drug) is specifically increased by prior convictions for similar offenses. However, those prior convictions must be for a completed crime, not an anticipatory crime (except in the case of certain Serious Violent felonies). New language is added which directs that for purposes of the Offender Score, prior felony anticipatory crimes count the same as for the completed crime.

Memorandum from Roxanne Park, Executive Officer of Commission to Legislature (Jan. 25, 1985). The amendatory language was approved by the Commission on December 7, 1984. Minutes of Commission, Motion 84–403 (Dec. 7, 1984). Based on this chronology and legislative history it is evident the Legislature intended that anticipatory offenses should be scored the same as completed offenses. Our decision is consistent with this legislative history.

▪ Further, were we to accept Becker's argument, RCW 9.94A.360(5) would be rendered meaningless. Statutes will be construed to give meaning to all of the language used and no portion will be rendered meaningless or superfluous. *State v. Blair,* 57 Wn. App. 512, 789 P.2d 104 (1990). A statute will not be interpreted in a manner which results in an absurdity. *Kirk v. Moe,* 114 Wn.2d 550, 789 P.2d 84 (1990). To give a meaningful interpretation to the SRA as a whole, RCW 9.94A.360(5) must supersede the general definition of violent offense.

▪ In a second argument Becker claims that the convictions for manslaughter and unlawful possession of a firearm "encompass the same criminal conduct" and should have been counted as one offense to calculate his offender score.

Generally current offenses are counted as prior convictions in calculating the offender score except

if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. . . . "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. . . .

RCW 9.94A.400(1)(a). The Supreme Court reaffirmed the test articulated in *State v. Dunaway,* 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987) for determining whether current crimes encompass the same criminal conduct:

[T]rial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. As it did in [*State v. Edwards,* 45 Wn. App. 378, 725 P.2d 442 (1986)], part of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.

*State v. Collicott,* 112 Wn.2d 399, 405, 771 P.2d 1137 (1989) (quoting *Dunaway,* 109 Wn.2d at 215). After applying this test to the facts in this case we conclude that the crimes do not encompass the same criminal conduct.

Although Becker contends that self–defense motivated both his possession of the firearm and the reckless behavior that resulted in Flynn's death, we cannot agree. Even if the facts on this issue were not disputed, this analysis of intent focuses on Becker's subjective intent rather than the objective intent required to commit the crime. Manslaughter requires that a person recklessly causes the death of another. Unlawful possession of a short firearm requires voluntary possession of a firearm subsequent to a felony conviction. We believe the objective intent of each crime is different.

The State cites the factually similar *State v. Thompson,* 55 Wn. App. 888, 781 P.2d 501 (1989) to support its argument that the crimes do not encompass the same criminal conduct. There, the defendant used a gun to assault another person and then fled the scene. Subsequently the police arrested him in possession of a revolver. The

*Thompson* court held that the two crimes did not encompass the same criminal conduct because each crime required a different criminal intent. The court reasoned that since Thompson possessed the revolver before and after the assault, the time and place of the crimes were not the same. We find that reasoning applies to the facts here and hold that the trial court properly counted each crime separately since they did not encompass the same criminal conduct.

The trial court is affirmed.

PEKELIS and WINSOR, JJ., concur.