138 P.3d 1114 (2006)
STATE of Washington, Respondent,
v.
Alyssa C. KNIGHT, Appellant.
No. 23698-6-III.
Court of Appeals of Washington, Division 3.
July 18, 2006.
*1115 Eric Broman, Eric J. Nielsen, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Kevin Michael Korsmo, Attorney at Law, Spokane, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 Alyssa Knight pleaded guilty to second degree murder (RCW 9A.32.050), conspiracy to commit first degree burglary (RCW 9A.52.020, 9A.28.040), and conspiracy to commit second degree robbery (RCW 9A.56.210, 9A.28.040). At sentencing, the court applied the violent offense doubling provision of the Sentencing Reform Act of 1981(SRA) (RCW 9.94A.525(8)) to count the conviction for conspiracy to commit second degree robbery as two points on the offender score.
¶ 2 On appeal, Ms. Knight contends conspiracy to commit second degree robbery is not a violent offense pursuant to the SRA's definitional statute, RCW 9.94A.030(45). She argues that the definitional statute controls, although the doubling provision provides that felony anticipatory offenses such as criminal conspiracies must be scored the same as completed offenses. RCW 9.94A.525(4). We disagree. However, we conclude that the record supports only one conspiracy conviction. Accordingly, we reverse the conviction for conspiracy to commit first degree burglary and remand for resentencing.

FACTS
¶ 3 Early in the morning on September 26, 2003, police responded to a reported shooting on Division Street in Spokane. Officers found Arren Cole dead from a gunshot wound to his lower back. Evidence led the police to Ms. Knight. Eventually she confessed that Mr. Cole was shot during a robbery planned by Ms. Knight and two men. According to the plan, Ms. Knight struck up a friendship with Mr. Cole, had sex with him at his hotel, and then lured him into an alley, where he was robbed and shot by Ms. Knight's confederates.
*1116 ¶ 4 Ms. Knight pleaded guilty to conspiracy to commit second degree burglary, conspiracy to commit first degree burglary, and second degree murder while armed with a firearm. She had no prior felonies in her criminal history.
¶ 5 At sentencing, the court used an offender score of four to compute Ms. Knight's standard sentence range. Each conspiracy conviction was treated as a serious violent offense and as another current offense pursuant to RCW 9.94A.525(1), (4), and (8). Consequently each conspiracy conviction counted two points. RCW 9.94A.525(4), (8). The resulting standard range for the second degree murder conviction with a 60-month firearm enhancement was 225 to 325 months. The court imposed 285 months of incarceration.[1]

OFFENDER SCORE
¶ 6 Ms. Knight first contends the trial court erred in computing her offender score. She argues that conspiracy to commit second degree robbery is not specifically included in the definition of a violent offense and therefore is not subject to the SRA's doubling provision. Although this issue was not raised at sentencing, a challenge to the offender score may be raised for the first time on appeal. State v. Ford, 137 Wash.2d 472, 477, 973 P.2d 452 (1999). We review the calculation of an offender score de novo. State v. Tili, 148 Wash.2d 350, 358, 60 P.3d 1192 (2003).
¶ 7 The SRA doubling provision, RCW 9.94A.525(8), provides that if the present conviction is for a violent offense not covered elsewhere in the statute, each prior adult and juvenile violent felony conviction counts as two points. Convictions entered or sentenced on the same date as the current offense are counted the same as prior offenses. RCW 9.94A.525(1), .589(1)(a). "Violent offense" is defined in the general definitional statute as "[a]ny of the following felonies," including "[c]riminal solicitation of or criminal conspiracy to commit a class A felony," and robbery in the second degree. RCW 9.94A.030(45).
¶ 8 Robbery in the second degree is a class B felony. RCW 9A.56.210(2). Accordingly, conspiracy to commit second degree robbery is not a violent offense under the definitional provision of the SRA. RCW 9.94A.030(45). However, the offender score statute specifically provides that prior convictions for felony anticipatory offenses are scored as completed crimes. RCW 9.94A.525(4), (6). Ms. Knight contends the offender score statute conflicts with the definitional statute, which should override the offender score provisions due to principles of statutory construction and the rule of lenity.
¶ 9 Similar arguments were raised in State v. Becker, 59 Wash.App. 848, 801 P.2d 1015 (1990). In Becker, the sentencing court counted a prior conviction for attempted second degree robbery as two points pursuant to former RCW 9.94A.360 (1990), recodified as RCW 9.94A.525. Mr. Becker argued on appeal that the attempted robbery was not subject to the doubling provision because it was not defined as a violent offense. Id. at 850, 801 P.2d 1015. Noting that apparent conflicts in statutes should be reconciled so that each is given effect, Becker concluded that the definitional statute and the doubling provision could be harmonized by reading the plain language of each statute:
The apparent conflict in the sections is based on the assumption that the attempted robbery can only receive two points if it is a "violent offense." Contrary to Becker's contention, the offense does not receive two points because it is a violent offense, but rather, it receives two points because the completed crime of robbery in the second degree would receive two points and the attempted robbery is to be treated as a completed crime. According to the plain language of [former] RCW 9.94A.360(5) the attempt must be treated the same as the completed crime. Such a reading of the two sections gives effect to *1117 each section and does not distort the language of the sections.
Id. at 852, 801 P.2d 1015. The same reasoning applies in this case.
¶ 10 Our objective in construing statutes is to determine legislative intent. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). A statute's plain meaning is considered an expression of that intent. Id. If, after examining the ordinary meaning of the statute's language as well as its context in the statutory scheme, there is more than one reasonable interpretation, we will treat the statute as ambiguous. Id. at 600-01, 115 P.3d 281. When truly ambiguous, the statute will be interpreted in favor of the defendant pursuant to the rule of lenity. Id. at 601, 115 P.3d 281.
¶ 11 As discussed in Becker, counting an anticipatory crime of second degree robbery as two points is consistent with the statutory scheme. 59 Wash.App. at 852-53, 801 P.2d 1015. The more specific inclusion of attempted (or conspiracy to commit) robbery in the second degree as a completed serious violent offense prevails over the more general and older definitional provision. Id. at 853, 801 P.2d 1015. This conclusion is consistent with the legislative history of the doubling provision of RCW 9.94A.525. Id. at 853-54, 801 P.2d 1015. The plain language of the provisions supports no other reasonable interpretation.
¶ 12 Finally, Becker noted that if we were to accept the defendant's argument that the definition in RCW 9.94A.030 controlled, then RCW 9.94A.525(4)[2] would be rendered meaningless or superfluous. Id. at 854, 801 P.2d 1015. "To give a meaningful interpretation to the SRA as a whole, [RCW 9.94A.525(4)] must supersede the general definition of violent offense." Id.
¶ 13 For the reasons outlined in Becker, and consistent with RCW 9.94A.525(4), we conclude that the conspiracy to commit second degree robbery must be treated the same as the completed crime. The trial court properly applied the doubling provision to count this conviction as two points on the offender score.

DOUBLE JEOPARDY
¶ 14 Ms. Knight next contends in supplemental briefing that the conspiracy to commit first degree burglary should be vacated on grounds of double jeopardy. Citing this court's recent decision in State v. Williams, 131 Wash.App. 488, 128 P.3d 98 (2006), petition for review filed (Wash. Mar. 8, 2006) (No. 78397-7), she argues that the facts support only one conviction for criminal conspiracy: the conspiracy to rob Mr. Cole. Although Ms. Knight pleaded guilty to both conspiracy to commit second degree robbery and conspiracy to commit first degree burglary, she did not waive her right to claim double jeopardy on appeal. State v. Cox, 109 Wash.App. 779, 782, 37 P.3d 1240 (2002).
¶ 15 The state and federal constitutions guarantee that no person will be twice put in jeopardy for the same offense. U.S. CONST. amend V; CONST. art. I, § 9; State v. Bobic, 140 Wash.2d 250, 260, 996 P.2d 610 (2000). When a defendant is charged multiple times for violations of a single statute, we must determine what unit of prosecution the legislature intended as the punishable act under that statute. Id. at 261, 996 P.2d 610. Double jeopardy protects the defendant from multiple convictions under the same statute for committing just one unit of the crime. Id. at 261-62, 996 P.2d 610.
¶ 16 Criminal conspiracy is defined by statute as an agreement to carry out a criminal scheme, along with a substantial step toward carrying out that agreement. RCW 9A.28.040(1); Bobic, 140 Wash.2d at 262, 996 P.2d 610; Williams, 131 Wash.App. at 496, 128 P.3d 98. As noted in Williams, the punishable criminal conduct is the plan, not whatever statutory violations the coconspirators considered in the course of devising the plan. Williams, 131 Wash.App. at 496, 128 P.3d 98. Bobic explains further:
"Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken *1118 to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one."
140 Wash.2d at 264-65, 996 P.2d 610 (quoting Braverman v. United States, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23 (1942)).
¶ 17 Here, as in Williams, Ms. Knight was a coconspirator in the robbery of Mr. Cole. She, Dione Williams, and another man developed a scheme to rob Mr. Cole and took substantial steps toward achieving that goal. "[A]ny number of acts in the days preceding the climax here could be labeled the substantial step that completed the crime of conspiracy." Williams, 131 Wash.App. at 497, 128 P.3d 98. Although the plans changed day to day on the methods to be employed in robbing Mr. Cole, these plans all served the single criminal conspiracy.
¶ 18 As in Williams, the record here supports only one conspiracy conviction: the conspiracy to commit second degree robbery (first degree robbery in Williams). The police reports that were referenced in Ms. Knight's guilty plea describe an earlier plan to enter Mr. Cole's hotel room with the intent to rob (the basis for the count of conspiracy to commit first degree burglary), but this plan was subsumed in the overall scheme that comprised the single criminal conspiracy.
¶ 19 Accordingly, the conviction for conspiracy to commit first degree burglary is reversed and the case remanded for resentencing.
WE CONCUR: SWEENEY, C.J., and KULIK, J.
NOTES
[1] Ms. Knight's original counsel appointed on appeal filed an Anders brief (Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)) and a motion to withdraw. By order filed on October 17, 2005, the commissioner of court granted the motion to withdraw but ordered appointment of new counsel to brief the issues of the offender score and the sentencing range.
[2] Former RCW 9.94A.360(5).